EDMUND J. LILLY *v.* JAMES PETTEWAY and others.

Where in an action upon a bill of exchange, it was in evidence that the defendant, the payee, had written a letter to the plaintiff and holder of the bill, in which he said: " I have seen M, of the firm of P & M, the drawer of the bill, who says, that in a week or two the note you write me about, will be attended to; if not, please write me—do not bring suit; if they do not attend to it, I will make all satisfactory to you:" *Held,* that the letter contained no evidence that the defendant knew that this bill of exchange had not been presented at the time of writing the letter, and that therefore he was entitled to his discharge.

If the endorser of a bill of exchange, with knowledge of the material facts which discharge him, promises to pay such bill, he is bound to do so.

This was a CIVIL ACTION to recover the value of a bill of exchange, tried before *Buxton, J.,* at Spring Term, 1875, of CUMBERLAND Superior Court.

The action was brought by the plaintiff as holder of the following bill of exchange:

" $875.00.

Sixty days after date pay to the order of John Dawson eight hundred and seventy-five dollars value received, and charge to account of

JAMES T. PETTEWAY.

To PETTEWAY & MOORE,
    Wilmington, N. C."

Endorsed,                    "JOHN DAWSON."

It was admitted that the bill was drawn by James T. Petteway and accepted by the drawees, Petteway & Moore, and that it was endorsed by John Dawson, and that it had not been paid.

The defendant, Dawson, insisted that the bill had not been duly presented and payment demanded of the acceptor, Pette-

way & Moore; and if there was a demand of payment' and a refusal or failure to' pay on the part of the acceptors, that there was not due notice given to defendant, Dawson, of such demand and refusal.

The counsel of the defendant, Dawson, was permitted by the Court, during the progress of the trial, and in his absence, to amend the sworn answer of the defendant, so as to present the points of this defence distinctly. The Court also granted leave to the counsel for the plaintiff to amend the complaint, either then or afterward, in conformity with the facts of the case as proved.

The plaintiff offered no evidence of the presentment of the bill to the acceptors for payment, nor of due notice to the endorser, John Dawson, of its non-payment; but read in evidence a letter of John Dawson to the plaintiff, relating to the paper in suit, of which letter the following is a copy:

"WILMINGTON, Jan. 27th, 1871.

M. E. J. LILLY,

*My Dear Sir:* In answer to yours of the 24th, received this. morning, I have seen R. Moore, of Petteway & Moore, who says, in a week or two the note you write me about will be attended to; if not, please write me. Do not bring suit; if they do not attend to it I will make all satisfactory to you. I thought they had paid it to you. long since.

Yours very truly,

(Signed)          JOHN DAWSON."

No protest was attached to the bill. It was admitted that Petteway & Moore had gone into bankruptcy. The plaintiff insisted that this letter, being an unequivocal promise to pay the debt made after a default on the part of the plaintiff in presenting the bill to the acceptor and giving notice of the refusal to pay to the endorser, was not only a waiver of such default, but was evidence from which the jury might infer that

the promise of the defendant was made with knowledge of the laches of the holder, and that this dispensed with the necessity of proof of actual presentment and notice, and requested his Honor so to charge the jury.

The defendant, Dawson, insisted :

1. That this letter was a mere proposition on the part of the defendant. That it did not appear that it was accepted by the plaintiff. It does not amount to a promise to pay, and was not, therefore, a waiver of demand and notice, and that defendant was not liable, and requested his Honor so to instruct the jury.

2. That if it was an absolute promise to pay, yet as at the time the letter was written, there had been no demand on and no refusal on the part of the acceptor to pay, the plaintiff at that time had no cause of action against the defendant, the promise was without consideration, and the plaintiff could not recover, and asked his Honor so to instruct the jury.

3. There is no evidence that at the time the letter was written, the defendant had any knowledge that the plaintiff had failed to make demand of the acceptor for payment, and had failed to give notice to the defendant; and that if this letter amounted to an absolute promise to pay, being made without a knowledge of the facts and the *laches* of the holder, that the defendant Dawson was not liable, and requested his Honor so to instruct the jury.

His Honor refused the instruction prayed for by the defendant, and charged the jury :

That ordinarily, in order to charge the endorser with liability, it was necessary for the holder of a bill of exchange to prove a demand on the acceptor at maturity, and due notice, that is, reasonable notice, that such demand was ineffectual. An endorsee might, however, waive laches in the holder, in respect to the demand and notice, by a subsequent promise to pay, made with a knowledge of the circumstances, which, but for the promise, would discharge him. In the present case, there was no evidence of due demand and notice. There was

evidence contained in the letter of John Dawson to the plaintiff of a subsequent promise to pay, and it was apparent that when he wrote the letter, on the 27th of January, 1871, that John Dawson, the endorsee, knew whether he had received notice or not; that being a fact within his own knowledge. While there was no evidence of a demand upon the acceptor at maturity, still if the jury could reasonably gather from this letter that Dawson made the promise therein contained, after a knowledge of the fact that due demand had not been made, then plaintiff was entitled to a verdict. But if the jury could not reasonably so infer from this letter, then the plaintiff was not entitled to recover, and their verdict should be for the defendant, John Dawson. The burden of the proof is upon the plaintiff, and the evidence must preponderate in his favor before he is entitled to a verdict.

To the refusal of his Honor to charge the jury as requested, and to the charge of his Honor as given to the jury the defendant, John Dawson, excepted.

There was a verdict for the plaintiff, and thereupon the defendant, John Dawson, moved the Court for a new trial. The motion was overruled, and the defendant appealed.

*Strange* and *W. McL. McKay*, for the appellant.
*Merrimon, Fuller & Ashe*, contra.

RODMAN, J. It is assumed as settled law:

1. That if the holder of a bill of exchange fails to present it to the acceptor for payment at maturity, and if it be dishonored, fails to give due notice thereof to the endorser, he is discharged. This general rule of course has exceptions, which are not material in the present case.

2. If the endorser, with knowledge of the material facts which discharge him, promises to pay the bill, he is bound to do so. It is admitted in the present case, that the bill was not duly presented for payment, and consequently that no notice

of presentment and dishonor was given to the endorser (the defendant).

The plaintiff contends that there is evidence that defendant did promise to pay after he had knowledge of the facts material to his discharge, and that he is therefore bound. The only evidence of such promise and of such knowledge is found in the following letter from the defendant to the plaintiff:

"WILMINGTON, January 27, 1871.

*Mr. E. J. Lilly:*

MY DEAR SIR—In answer to yours of the 24th, received this morning, I have seen R. Moore, of Petteway & Moore, who says in a week or two the note you write me about will be attended to—if not, please write me—do not bring suit—if they do not attend to it, I will make all satisfactory to you. I thought they had paid it to you long since.

Yours very truly,

JOHN DAWSON."

His Honor instructed the jury, in substance:

(1.) That there was evidence contained in the letter of a promise to pay the plaintiff. In this we concur with his Honor. The words, " I will make all satisfactory to you," admits of no other construction. It is not, as contended by defendant, a mere proposition to pay in case plaintiff will forbear suit, and requiring acceptance in order to make it binding on defendant. Nor was any new consideration necessary to the validity of the promise. The promise to pay did not create a new obligation, which would require a new consideration, but merely waived a defence which the defendant had, and the antecedent liability was sufficient to suport this.

(2.) " That it was apparent, that when the defendant wrote the letter on the 27th of January, 1871, he knew whether he had received notice or not, that being a fact within his own

knowledge." This expression must be taken to mean that defendant knew that he had not received notice. His Honor is supported in it by several cases, which we do not cite because they are cited in 1 Parsons on Bills and Notes, 603. But it is not necessarily true, inasmuch as notice may be given without personal service and consequently without personal knowledge. A man may be absent from home ; the mail miscarry, &c. The question whether a defendant knows that notice has not been duly given to him is not, it seems to us, one to be assumed by the Court as necessarily to be inferred from his promise to pay the debt, but it is one proper to be left to the jury upon all the circumstances which may be in evidence in the case. We think his Honor erred in undertaking to decide this fact. In the view we take of the other question in the case, however, it is not material.

(3.) " While there was no evidence of a demand upon the acceptors at maturity, still if the jury could reasonably gather from this letter, that Dawson made the promise therein contained after a knowledge of the fact that due demand had not been made, then the plaintiff was entitled to a verdict. But if the jury could not reasonably so infer from this letter, then the plaintiff was not entitled to recover, and their verdict should be for the defendant. The burden of proof is upon the plaintiff," &c.

His Honor thus held that the letter contained evidence tending to prove, and from which it might be reasonably inferred that the defendant had knowledge that the bill had not been presented for payment. We do not concur with his Honor in this. In what line is such evidence found. Of course it is not to be inferred from his promise to pay, because if so, a promise would be binding in every case. It is said the defendant saw Moore, one of the firm of acceptors, and it *may* be that Moore told him that the bill had been presented. But there is no evidence that Moore himself knew that the bill had not been presented. It might have been presented to his

partner, which though equivalent in effect for most purposes, would not be so to prove actual knowledge by Moore. But the most that can be said is, that it is *possible* that Moore had the knowledge and communicated it to the defendant. If I were permitted to inquire into the probabilities of the matter individually, I should think it most probable that Moore did not communicate a knowledge of the want of presentation to the defendant. If on his applying to Moore to pay the bill, Moore had said to him, " The bill was never duly presented to us for payment; it is no concern of yours; you are discharged," it seems to me that probably the defendant would not have written the letter promising payment. Others might think the probability to be the other way. But take it either way, the probability, it must be confessed, is of the most uncertain kind, giving no sure foothold, and not rising above a conjecture. Then the maxim comes in, that the burden of proof is on the party who affirms the fact; that is, on the plaintiff here, as he affirms the fact of knowledge.

We are of opinion that there was no evidence that the defendant, when he wrote the letter, had knowledge that the bill had not been presented.

I have omitted to refer to any authorities because they are all cited in 1 Parsons on Notes and Bills, 601 and notes.

There is error in the judgment below, which is reversed.

PER CURIAM.                            *Venire de novo.*